# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 13-417V
Filed: April 20, 2015

* * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| KATRENA RAYNER, | * | Not to be published |
| | * | |
| Petitioner, | * | Special Master Dorsey |
| | * | |
| v. | * | Attorneys' fees and costs |
| | * | decision; Tetanus-Diphtheria |
| | * | vaccine; Meningococal Vaccine; |
| SECRETARY OF HEALTH | * | Human papillomavirus Vaccine; |
| AND HUMAN SERVICES, | * | Influenza Vaccine; Seizures; |
| | * | Migraines. |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * * * *

Ronald C. Homer, Conway, Homer & Chin-Caplan, P.C., Boston, MA for petitioner.
Glenn A. MacLeod, U.S. Department of Justice, Washington, DC for respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On June 25, 2013, petitioner filed a petition for Vaccine Compensation in the National Vaccine Injury Compensation Program ["the Program"],[2] alleging that Tetanus-Diphtheria ("TD"), meningococcal, and human papillomavirus ("HPV") vaccinations on July 28, 2010 caused her to develop neurological injuries. Petition at ¶ 1, 2. On January 8, 2014, petitioner filed an amended petition alleging that a series of vaccinations, TD, meningococcal, HPV, and influenza ("flu") caused her to develop migraines and seizures. Amended Petition at ¶ 3, 7, 29.

On January 16, 2015, petitioner moved for a decision dismissing the petition pursuant to Rule 21(a). In her motion, petitioner stated that "[she] has been unable to secure further evidence

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy.  When such a decision is filed, petitioners have 14 days to identify and move to redact such information prior to the document's disclosure.  If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 et seq. (hereinafter "Vaccine Act" or "the Act").  Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

required by the court to prove entitlement to compensation in the Vaccine Program."  Motion at ¶ 1.  A decision dismissing the petition was filed on February 19, 2015.  Petitioner now seeks $23,161.90[3] in attorneys' fees and $2,729.56 in costs, as set forth in her interim, final, and supplemental applications. Total fees and costs requested by the petitioner are $25,891.46. Respondent opposes the petitioner's request on the basis that petitioner has failed to present evidence to support a finding of reasonable basis.  Respondent's Opposition to Petitioner's Application For Fees and Costs ("Resp. Opp.").

For the reasons set forth below, the undersigned finds there was a reasonable basis to bring the petition and therefore grants petitioner's request for attorneys' fees and costs. However, the undersigned will reduce the total amount of attorneys' fees requested by ten percent because multiple attorneys worked on the file, interoffice meetings were inappropriately billed for, and some entries by the attorneys provided no added benefit to the petitioner or to the resolution of the case. Accordingly, petitioner's counsel will be awarded reduced attorneys' fees in the amount of $20,845.71. Including costs, the total amount awarded to petitioner is $23,575.27.

## I.    FACTUAL AND PROCEDURAL SUMMARY

Ms. Rayner was born on January 8, 1996.  On June 25, 2013, petitioner filed her petition for vaccine compensation alleging tetanus-diphtheria ("TD"), meningococcal, and human papillomavirus ("HPV") vaccinations that she received at age fourteen, on July 28, 2010, caused her to develop neurological injuries.  Petition at 1-2.  Ms. Rayner had pre-existing conditions including back pain from gymnastics training, dysmenorrhea, and occasional upper respiratory infections.  See Petitioner's Exhibit ("Pet. Ex.") 13 at 83-84, 86-87.  She was admitted to Baptist Methodist Center in May 2012, with complicated migraine, generalized seizures, left-sided weakness, and hypokalemia. Pet. Ex. 10 at 21-23.  Upon discharge, she was able to walk with a walker.  Pet. Ex. 9 at 312.  She was admitted several times in the following months for the same reasons.  See Amended Petition at 11.

The initial status conference was held on August 22, 2013.  At that time, no medical records had been filed.  On September 3, 2013, petitioner filed exhibits 1 through 13.  The Rule 4 report was suspended, pending the filing of complete medical records.  Additional medical records were filed from October through December 2013 and on December 9, 2013, petitioner filed her statement of completion.  On January 8, petitioner filed an amended petition in which relevant portions of the medical records were cited setting forth petitioner's extensive medical history related to migraines, as well as numerous other medical problems. See Amended Petition.

Respondent filed her Rule 4(c) Report on February 7, 2014, in which she pointed out that

---

[3] Petitioner's original motion requested $19,644.00 in attorneys' fees. See Tab A of Petitioner's Application for Interim Attorneys' Fees, filed Sep. 19, 2014. Petitioner later filed a supplemental motion for fees totaling $1,896.20.  See Tab A of Petitioner's Application for Interim Attorneys' Fees, filed Feb. 27, 2015. Finally, petitioner requests an additional $1,621.70 in attorneys' fees for costs to file her Reply to Respondent's Opposition to Petitioner's Application for Final Attorneys' Fees and Costs. See Petitioner's Supplemental Application for Attorneys' Fees and Costs, filed Apr. 6, 2015. The total of the three amounts is $23,161.90.

none of petitioner's treating physicians (of which there were many) implicated the vaccines as a cause of petitioner's medical problems.  See Respondent's Rule 4(c) Report at 14, filed Feb. 7, 2014.  Moreover, respondent argued that there was no evidence of a temporal relationship between the vaccine and injury, and in fact, it appeared that the onset of petitioner's migraines was prior to her vaccinations in July 2010. Id. Respondent questioned whether there was ever a reasonable basis to file the claim.  Id. at 16.

Thereafter, a status conference was held on April 3, 2014 and issues of onset and temporal association were discussed.  The petitioner was informed that she would require an expert in order to pursue her claim, and she was ordered to file an expert report by July 2, 2014.  On July 2, 2014, petitioner requested an extension of time in which to file an expert report.  This request was granted and petitioner was given until September 19, 2014 to file an expert report.  On August 28, 2014, petitioner filed a status report in which she stated that her counsel did not intend to proceed further with the entitlement portion of the case. See Petitioner's Status Report, filed Aug. 28, 2014.

On September 16, 2014, petitioner's counsel filed a motion for attorney's fees and costs. The petitioner initially requested and was given time to find alternate counsel, but on January 16, 2015, she ultimately filed a motion for a decision dismissing the petition, as she had been unable to secure further evidence required by the court to prove that she was entitled to compensation.  A Decision on the motion to dismiss was issued on January 27, 2015.

Petitioner's counsel filed a motion for final attorneys' fees and costs on February 27, 2015. Respondent filed her response on March 25, 2015, objecting to the payment of attorneys' fees and costs on the basis that petitioner's claim never had a reasonable basis. Resp. Opp. at 1.  The respondent argues that the medical records show that petitioner's migraines started before she received the vaccines at issue, that petitioner had a family history of migraines, that there was no evidence in the records to support causation, and that there was no temporal or causal relationship between her vaccines and the onset of her seizures.  Resp. Opp. at 4.

Petitioner filed her response on April 6, 2015, arguing that the claim was feasible and not frivolous.  See Petitioners Reply to the Respondent's Opposition to Petitioner's Application for Attorneys' Fees and Costs ("Pet. Reply") at 2-12.  To support that her claim had a reasonable basis, petitioner stated that her headaches began thirty days after vaccination and that headaches are documented adverse events according to the package inserts for HPV and TD vaccines. Id. at 5. Addressing respondent's statement that petitioner experienced headaches before vaccination, petitioner noted that any headaches that occurred prior to vaccination were associated with her menstrual cycle.  Id. at fn 5.  After receiving her vaccinations in July, petitioner's pediatrician reported that the onset of her headaches were "sudden . . . and persistent." Id. at 6. Petitioner also documented adverse reactions to later vaccinations.  Id. at 6-7.

In addition, petitioner argues that counsel acted reasonably in their investigative efforts as the statute of limitations approached. Pet. Reply at 8. After receiving "binders" of medical records, petitioner discovered that additional medical records were necessary, but in order to "preserve the statute [of limitations]" they filed the claim before the medical records were complete.  Id. at 9. Although petitioner ultimately dismissed her claim, she maintains that a temporal association was present between vaccination and injury and that the injury she suffered was consistent with the

reported side-effects, which have previously been compensated under this program. Id. at 12. For those reasons, petitioner argues that pursuing her claim was reasonable and meets the standard created under the Vaccine Program. Id.

This issue is now ripe for adjudication.

## II.   DISCUSSION

### A.  Applicable Legal Standards

When a petitioner is successful in proving her vaccine claim and is awarded compensation, a special master must also award reasonable attorneys' fees and costs. However, "[s]pecial masters have broad discretion in awarding attorneys' fees where no compensation is awarded on the petition." Silva v. Sec'y of Health & Human Servs., 108 Fed. Cl. 401, 405 (2012). If a petitioner fails to prove entitlement, a special master "*may* award an amount of compensation" for reasonable attorneys' fees and costs "*if* the special master . . . determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1)(B) (emphasis added); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of Health & Human Servs., No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of Health & Human Servs., No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Moreover, petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules, and neither the Federal Circuit nor the Court of Federal Claims has defined "reasonable basis" for purposes of fee awards under the Vaccine Act. Chuisano v. U.S., 116 Fed. Cl. 276, 285 (2014). However, many special masters and Court of Federal Claims judges have determined that a "reasonable basis" is an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 303 (2011); Chuisano, 116 Fed. Cl. at 286. In determining reasonable basis, the Court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of Health & Human Servs., No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9.

An attorney's pre-filing investigation into the feasibility of the claim is also a relevant factor in analyzing whether a petition had a reasonable basis. Cortez v. Sec'y of Health & Human Servs., No. 09-176V, 2014 WL 1604002, at *6 (Fed. Cl. Spec. Mstr. Mar. 26, 2014). A special master may consider "circumstances under which the petition is filed, including whether petitioner filed with the assistance of counsel, and if so, how much time before the filing deadline petitioner provided counsel for [a] pre-filing investigation." Id.

In awarding attorneys' fees, a special master has discretion to reduce the number of hours requested by the petitioner. Hines v. Sec'y of Health & Human Servs., 22 Fed. Cl. 750, 753 (1991).

The discretion of a special master, in this regard, is entitled to deference given the special master's experience and familiarity with the litigation.  Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cl. 1993). Further, "the Vaccine Act compels each special master to determine independently whether a particular request is reasonable. This obligation is not suspended . . . merely because respondent failed to object to a particular fee item." Gabbard v. Sec'y of Health & Humand Servs., No. 99-451V, 2009 WL 1456434 at *5 (quoting Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 318 (2008)).

### B.      Analysis

Generally, petitioners are entitled to a presumption of good faith, and in this case, respondent does not contest petitioner's good faith.  Resp. Opp. at 4; see Grice v.Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (1996). Moreover, there is no evidence that this petition was brought in bad faith; therefore, the undersigned finds that the good faith requirement is present.

Respondent, however, does contest whether this petition was supported by a reasonable basis. Respondent argues that the absence of any support from Ms. Rayner's treating doctors and/or an expert opinion that her condition was caused by the vaccinations, makes filing a claim unreasonable here. Resp. Opp. at 5. According to respondent, the medical records indicate, for example, that petitioner's headaches likely began prior to her vaccinations and that she had a significant family history of migraines. Resp. Opp. at 6. Respondent further argues that there was no clear temporal or causal relationship between any of petitioner's alleged injuries and receipt of the vaccines; and that in the absence of supporting evidence of a claim, an impending statute of limitation deadline does not create a reasonable basis for filing the claim. Id. at 6-8.

In response, petitioner's counsel argues that his actions were reasonable in processing petitioner's case. Pet. Reply at 8. Counsel argues that petitioner saw numerous physicians and that it took a considerable amount of time to collect and review her medical records. Due to the impending statute of limitations deadline, counsel filed the petition before all of the records were obtained to preserve petitioner's right to file a claim. Pet. Reply at 9. Further, petitioner's counsel argues that, given the facts of this case and the totality of the circumstances, petitioner's claim was not "frivolous" and maintained a reasonable basis until dismissed. Pet. Reply at 8. As such, according to counsel, the reasonable basis inquiry turns on the "feasibility of a claim, rather than the likelihood of success." Pet. Reply at 8.

Whether there is a "reasonable basis" to file a claim is determined on a case-by-case basis. In this case, the undersigned finds that there was a reasonable basis to file petitioner's claim, as counsel acted reasonably under the circumstances. It is often not within counsel's control when requested medical records are finally obtained, and given that the petitioner saw numerous physicians for a myriad of health issues, the undersigned is persuaded that counsel put forth their best efforts in investigating the claim in the time before the statute of limitations was set to expire. On March 12, 2013, counsel agreed to further investigate petitioner's claims and was provided with "extensive" medical records. Pet. Reply at 8. Subsequently, upon review of the records in his possession, they noted that the records were not complete and requested six or more sets of medical records. Id. at 9. Counsel filed this claim on June 25, 2013 in light of the fact that the statute of limitations was set to run approximately one month later and they had yet to receive all outstanding medical records. Id. Indeed a Statement of Completion indicating that the medical records were

complete was not filed until December 2013, almost six months after the petition was filed.

Other special masters have considered an impending statute of limitations deadline in deciding whether there is reasonable basis to file a claim, and in this instance, the undersigned finds it pertinent to the decision here. See, e.g., Cortez, 2014 WL 1604002 at *6. While it is always preferable for counsel to file petitions along with a complete set of medical records—as is required by the Vaccine Rules—the circumstances of this case does not require finding that counsel filed a claim lacking a reasonable basis.

Further, with regard to respondent's arguments on the merits of petitioner's case, the undersigned notes that there are many ways in which petitioner's case could have developed on these facts. For example, the fact that petitioner may have had preexisting symptoms prior to her vaccinations did not foreclose the possibility of asserting and succeeding on a significant aggravation claim under 42 U.S.C. § 300aa-11. Further, there are claims that succeed even where there is no documentation by a treating physician to support causation.  See, e.g., Baron v. Sec'y of Health & Human Servs., No. 90-1078V, 1992 WL 333122 at *2. Although petitioner here was ultimately unable to find an expert to opine in her favor, the undersigned is not persuaded to find that it serves as a basis to deny fees and costs.

Accordingly, petitioner had a reasonable basis to file a claim.

### C.  Determination of a Reasonable Award

The next issue is to determine the amount of a reasonable award.  Respondent does not set forth any specific objection to any of the fees or costs, but states that "[i]n the event the special master determines that an award of attorneys' fees and costs is appropriate, respondent requests that the special master exercise her discretion to determine a reasonable award."  Resp. Opp. at 12.

Petitioner seeks $23,161.90 in attorneys' fees and $2,729.56 in costs for a total of $25,891.46.  The billing records reflect that five different attorneys worked on the file.  See Pet. App. Interim Tab A; Pet. App. Final Tab A. Having multiple attorneys work on a file is ineffective and inefficient.  The bills also show multiple entries for interoffice case meetings and entries by attorneys which do not appear to add value to the case.  Id.  For these reasons, the undersigned will reduce the attorneys' fees by ten percent. "Special masters are permitted to reduce the claimed number of hours to a reasonable number . . . by means of a bulk reduction [and] . . . are not required to assess fee petitions . . . line-by-line." Gabbard, 2009 WL 1456434 at *6.

After a ten percent reduction, the amount of attorneys' fees awarded is $20,845.71. Regarding costs, the invoices submitted to verify payment of costs all appear to be valid and accurate.  Therefore, the requested costs in the amount of $2,729.56 will be awarded. The total amount petitioner is awarded for attorneys' fees and costs under 42 U.S.C. § 300 aa-15(e) is **$23,575.27**.

### III.    CONCLUSION

The undersigned finds that there was a reasonable basis to bring this petition and it was

brought in good faith. Petitioner's request for attorneys' fees and costs is **GRANTED.** Attorneys' fees will be reduced by a flat ten percent. The reduced rate to be awarded to petitioner shall be $20,845.71 in fees and $2,729.56 in costs, for a total of $23,575.27.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

**s/ Nora Beth Dorsey**
Nora Beth Dorsey
Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.